COMMONWEALTH OF MASSACHUSETTS

Middlesex County

Framingham District Court
Docket# 0149CR001768
Appeals Court
Docket# 2004-P-377

Aug 10 2005

The Honorable
Associate Justice,

Re: Commonwealth v. Wayne Beckford
    No:

Dear Justice

    Pursuant to Mass. 28 USC Sec 1651(a)  I respectfully write to petition the Court for rehearing of the decision in the above-referenced case.  I do so because the decision misapprehends the record and the defendant's arguments. This Court also overlooks clear precedent when it concludes that no sufficiently harmful errors were present during the lower court proceedings.

    The record reveals that, on several instances, the defendant's rights were violated by flawed legal rulings and incompleteness.  The errors in this matter are, in fact, more egregious than many matters where both this Court and the Supreme Judicial Court have found that a conviction cannot stand.

    First, in finding sufficient evidence to support guilt on the distribution charges, this Court relied on Officer Blass' apparent observation of a hand-to-hand transaction with the defendant.  Memorandum and Order at p. 2-3. However, this conclusion mischaracterizes Officer Blass' explicit trial testimony.  For the November 21, 1999 count, Officer Blass did not in fact witness a hand-to-hand exchange.  Rather, Officer Blass never saw the defendant hand any object of any kind to the confidential informant. (T.VI. 132-33).  Officer Blass never saw the informant carry away or place on his person any object of any size after his alleged interaction with the defendant.  The defendant cannot locate, nor has the Commonwealth cited, a single instance where a distribution conviction has been affirmed in the face of a record lacking both of these critical factors.  Such a two-way exchange is the essential element of a distribution charge.  Its presence is indispensable. Without observing these indicia of an exchange, every conclusion a jury could make regarding the distribution is susceptible to multiple inferences and ventures into mere speculation.  After crediting all of Officer Blass'

The Honorable
   Aug 10, 2005
Page 2

testimony, the jury was still left with the critical questions, ``how did the informant receive the cocaine?'' ``when did the exchange take place?'' Officer Blass' testimony cannot provide the answers to these questions. The testimony spoke nothing of an exchange from Mr. Beckford. An inference that Mr. Beckford distributed the cocaine from these facts is therefore not ``reasonable'' because it requires the jury to create facts necessary for a conviction rather than drawing conclusions from facts presented. The physical link as to how the cocaine was distributed, an indispensable element of the charge, cannot be inferred from Officer Blass description of the informant's activities or an allegedly vague statement. This court has seemingly overlooked the fact that, whatever inferences the jury may have made from Officer Blass testimony could not shed any light on the lack of any hand exchange on the part of the defendant, or that the informant was not seen handling any object after the alleged exchange. Officer Blass' testimony was simply not detailed enough to carry this burden.

   The lack of evidence regarding any exchange by the defendant is particularly damaging in this case because another participant capable of distributing the cocaine was present at the November 21st scene (Sandra Mulchay) and no furtive behavior or indicia of the drug trade were ever attributed to the defendant. The Court correctly acknowledges that the marked money allegedly used for the controlled buy was never recovered from the defendant. Memorandum and Order at n. 1. No stash of drugs was ever recovered from the defendant. These facts have always been critical in assessing the sufficiency of evidence for a distribution charge. In the absence of an exchange, they prove fatal.

   The Court as apparently ignored the fact that it cannot be proven that the defendant even possessed the drugs. Actual possession cannot be shown because no witnesses saw the defendant directly possess or handle the cocaine. Constructive possession cannot be shown because there was no showing of how Mr. Beckford possessed dominion or control over the cocaine. Showing possession is necessary to prove distribution. See Commonwealth v. Gagnon, 387 Mass. 768, 769 (1982). Here, the inability to make out a case for even possession reveals how the evidence was insufficient to support the more fact intensive distribution count. If this matter were prosecuted as a mere possession case, a required finding of not guilt would be necessary. Therefore, the more fact specific distribution counts cannot stand. Because no evidence was offered that the defendant handed

The Honorable
    Aug 10, 2005
Page 3

any object to the informant, or that the informant handled any object after he interacted with the defendant, whatever facts Officer Blass testified to could not amount to a showing that the defendant distributed cocaine for the November 21st count. The key elements were lacking.

    The November 27, 1999 count suffers from similar infirmaries. The informant was interacting with several people at the scene. (T.VI. 98-99). The defendant was not said to be the target of a drug sale. Only after the interior car light went on did Officer Blass indicate that he saw a man later identified as the defendant hand something to the informant in the back seat. (T.VI. 98). Officer Blass never saw money being exchanged. Once again, no marked money or drugs were ever recovered from the defendant after the alleged incident. No identifying characteristics of the drug trade were ever attributed to the defendant. This Court's decision adopts the proposition that, if an officer can place drugs at a scene, unspecified hand movements by an individual present at the scene necessarily equate to possession and distribution of said drugs. This conclusion exists regardless of the fact that others, whose activities could not be chronicled, were at the scene, the alleged purchaser interacted with these individuals, the alleged purchaser was not observed during times when he could have obtained the drugs, no furtive or unusual behavior was attributed to the alleged distributor, no description of any object or package allegedly passed was ever offered, and the alleged recipient was not seen handling any packages after the alleged exchange with the suspect. The precedent is clear that in such circumstances, vague hand movements have never been held to be sufficient evidence. C.f. Commonwealth v. Johnson, 42 Mass. App. Ct. 948, 950 (hand movements augmented by Court first found constructive possession, by virtue of defendant being only individual who entered vacant lot, and then finding ``stash'' of narcotics on defendant).

    In finding sufficient evidence for the distribution counts, the Court has disregarded well-established case law. The case of Commonwealth v. O'Toole, 52 Mass. App. Ct. 183 (2001), *further review granted* 435 Mass. 1103, clearly sets forth the parameters of what facts are legally necessary to sustain a distribution charge. The lynchpin of the reasoning in O'Toole was that ``[n]either officer had been able to see what was in the defendant's hand at any point.'' O'Toole, 52 Mass. App. Ct at 185. The same is true here. Moreover, just as in this matter, in O'Toole, no drug paraphernalia or money were ever recovered from the defendant. Both defendants were not seen with any packages.

The Honorable
 Aug 10, 2005
Page 4

In fact, O'Toole presented this Court with far more culpable facts. There, the defendant ``reached into the front of his pants, down into his underwear, removed something, put his hand inside the vehicle [where the alleged purchaser was located] [and] withdrew his hand from inside the vehicle.'' O'Toole, 52 Mass. App. Ct. at 183. On November 21, 1999, no witness ever observed Mr. Beckford hand, or even attempt to hand, anything to the confidential informant. This Court made clear in O'Toole that because ``it [may] be reasonably inferred from the evidence that the defendant was engaged in some type of illicit activity'' does not equate to evidence of a drug sale. O'Toole, 52 Mass. App. Ct. at 185. O'Toole solidifies the proposition that a jury cannot be permitted to find ``constructive distribution.'' Some indicia of how, or whether, the drugs were transferred by the defendant is vital. Upon its further review, the Supreme Judicial Court let stand this reasoning. Yet, the precise interpretation rejected in O'Toole has been adopted to support the present decision. But in both cases the critical connection of how the drugs came into the possession of the alleged buyer is lacking. This absence is of utmost importance because the choices among inferences become clouded. This shortcoming drove the Court's reasoning in O'Toole. Indeed in O'Toole, the jury had vastly more physical movement, two-way hand gestures and drug products in which to find distribution than in this case. As such, the defendant respectfully submits that this Court's decision fails to compare the facts offered at trial to the firmly rooted authority.

   The principle case this Court relies on for its decision solidifies this belief. Memorandum and Order at p. 3. The controlled buy present in Commonwealth v. Villella, 39 Mass. App. Ct. 426 (1995), offers drastically more culpable facts than this case. Most notably, the officers supervising the controlled buy in that case saw the intermediary enter the defendant's residence with marked money and leave with packages. See Villella, 39 Mass. App. Ct. at 429-30. The officer here, on both counts, never saw the informant walk away from the defendant with any objects, or place any packages on his person. In Villella, the officers discovered bags of marijuana, and the very marked money used for the buy, on the defendant's person. See id. at 430. No such find was made here. Considerably less facts are present in this case. The lack of an objective link between the drugs being found on the informant and how the drugs emanated from the defendant creates a critical gap in the evidence. This Court should therefore recognize the important factual distinctions between this case and those where the evidence has been found sufficient to support distribution.

The Honorable
   Aug 10, 2005
Page 5

The defendant next avers that this Court has misconstrued critical parts of the record in reaching its conclusion that the erroneous jury instruction was harmless error. First, the Court acknowledges, as does the Commonwealth, that it was error to instruct the jury that joint venture liability applied to the November 27, 1999 count. Memorandum and Order at p. 3. However, this Court misreads the record when it concludes ``the judge corrected the instruction as to the date in responding to a request for clarification from the jury.'' Memorandum and Order at p. 3. The record is clear that the judge made no such date reference in his subsequent instruction. Rather, the judge only remarked ``[a]nd as I stated, it [joint venture] only relates to count 3 of the complaint...well that's count 3 and 5.'' (T.VII. 202). No date reference was ever mentioned in this latter instruction. The error was never corrected. Quite the opposite, the only time the jury ever heard a recitation of the law applied to the November 27th count, the evidence, admittedly, did not warrant such an instruction. Troubling is that the second instruction did not acknowledge that any error was present in the first set of instructions. The follow up instruction incorrectly assumed that there was never any error. Accordingly, there was no frame of reference for a reasonable juror to know which instruction might have been a ``slip of the tongue'' - the first or the second. It was certainly reasonable for a juror to conclude that the application of the joint venture theory to the November 27, 1999 count made perfect sense. Joint venture liability was an active part of the case. Yet, the jury did not have the benefit of the charge conference to sort out where the joint venture theory in fact should have been placed. Rather, it was governed only by the conflicting and incomplete instructions of the court. The jury was still free to draw the wrong conclusion from the charge. The lack of completeness in the second charge, and the fact that the judge was attempting to do nothing more than solidify the previous wrong charge - as objectively referenced by the court saying ``as I stated [in the original charge]-'' makes this possible and likely. See Commonwealth v. Carson, 349 Mass. 430, 435 (1965) (it is not sufficient that instruction be drawn so that jury may reach the right conclusion, they must be framed also that the jury may not draw the wrong conclusion from facts found); Commonwealth v. Delaney, 8 Mass. App. Ct. 406, 409 (1979) (erroneous instruction ``may have created an impression...which may not have been entirely dispelled'' by a subsequent correct instruction).

It is apparent that the trial court did not do enough in its subsequent instruction to cleanse the previous error

The Honorable
    Aug 10, 2005
Page 6

and clear up the confusion that the jury, by virtue of its question, certainly had. Most importantly, the jury never heard the proper legal standard to be applied to the November 27, 1999 count. No reading of the one sentence follow-up instruction can alter this crucial fact. A conviction has never been allowed to stand where a jury was never charged with the proper law governing a count. This constitutional violation is particularly egregious. The heart of a fair trial is challenged. In this regard, the Court's decision misapprehends the defendant's position and the harm that is claimed. The Court concludes that Mr. Beckford suffered no harm because he was acquitted of the December 4th charge, to which the joint venture theory was supposed to apply. Memorandum and Order at p. 4. However, this conclusion ignores the true impact of the harm. For the November 27, 1999 charge, the trial court provided the jury with an alternate means of convicting the defendant that was not supported by the facts in evidence. Compounding this error is that such alternate means, joint venture theory, is less factually intensive and eases the Commonwealth's burden in an already thin circumstantial case relating to direct guilt.

    Regarding the issue of the absent photographs, the Defendant respectfully argues that this Court's decision again misconstrues the defendant's argument and the nature of the error. This Court's opinion states, ``We see no error in the fact that the photos were not produced at trial.'' Memorandum and Order at p. 4. However, the Court has seemingly made the same oversight the Commonwealth did in its brief. (C. Br. 19-26). The error in not producing the photographs does not relate to their failure to be produced during trial, but rather the inability to assess whether suggestive photographs formed the basis of Officer Blass' in-court identification. The motion court ruled that the photographs should be produced. (T.VI. 29-30). The prosecutor indicated that he would inquire about their status. The issue was left open, and then simply dropped out of the proceedings. This Court's decision fails to recognize that, if the photographs were produced, as was envisioned, the motion court would have assessed whether they were suggestive and revisited the ruling regarding the admissibility of the identification. The matter was not settled. This Court therefore reads too much into the motion court's initial ruling. The motion court ruled only that an independent source apart from the deceased confidential informant could support the identification. (T.VI. 32). The admission of the identification was, by constitutional necessity, conditioned on any photos not

The Honorable
    Aug 10, 2005
Page 7

being suggestive. The further probing that was needed, that the motion court endorsed, was never accomplished.

Defense counsel's lack of further objections at trial do no bear on the issue, as this Court seems to indicate. Memorandum and Order at 4. The trial court did not halt the proceedings to wait for the photos to be produced. When they were not produced, defense counsel's failure to raise the issue again at trial did not somehow cleanse the error or signify that the photographs were not suggestive. Rather, defense counsel was simply using the evidence at his disposal at this stage of the on-going litigation. Defense counsel was operating under the circumstances presented.

This Court seems to premise its decision on the fact that, even if the photographs had been suggestive, there would be no error. Yet, by Officer Blass own testimony, the identification was in no way so strong so as to eliminate the need to probe the nature of the photographs. The Court's conclusion regarding the sufficiency of Officer Blass' personal observations ignores his very testimony. Officer Blass stated that he used photographs of the defendant to procure the identification itself. The photographs influenced his memory. They were viewed ``throughout the investigation'' (T.VI. 23-24) and not after an identification had already been confirmed. In fact, the officer could not make a positive identification after any of his on-scene observations. Accordingly, the record is clear that the photos were not used to simply confirm the identity of the suspect. The photographs were a tool that procured the identification. Such a tool used to bring about a positive identification, like a line up, must be probed to determine if it passes constitutional muster. Indeed, looking at the testimony and the timing of the identification confirms the very presence of suggestive photographs. Officer Blass never testified that he viewed photographs of anyone but the defendant. The defendant was therefore confronted with an identification, based on the viewing of photographs of him, that he never had the opportunity to view. The constitutional harm is self-apparent. This Court should recognize that because Officer Blass' identification was the signature piece of evidence in this case, the necessity of providing and evaluating the evidence that made the identification possible is essential to the defendant's rights. See Commonwealth v. Vardinski, 438 Mass. 444, 450 (2002).

Lastly, this Court overlooks the impropriety of joining these charges together. Aside from the record not showing a common scheme or plan, joinder severely prejudiced the

The Honorable
    Aug 10, 2005
Page 8

defendant's rights.  The evidence was circumstantial in nature, relying exclusively on the credibility of prosecution witnesses.  The defendant was acquitted on the December 4th count.  The jury recognized weakness in the evidence.  Yet, joining the charges together signified to the jury that the defendant had a criminal propensity.  This Court overlooks the fact that the prosecutor in summation used the presence of each count in the case to argue before the jury that this was the manner by which the drug sales took place.  (T.VII. 164).  Joinder established the contested issues as matters of fact, rather than subject to the proper proof.  Joinder was particularly harmful here because of the alleged admission that Mr. Beckford made about being in the back of the car on December 4th.  (T.VII. 47-48).  This statement, which would otherwise not be before the jury on the other counts if the charges were separated, contributed to the convictions on the other counts because it presented evidence from the defendant's own mouth related to the disputed issues - his presence at a drug sale.  The jury was allowed, and indeed encouraged by the prosecutor, to use this admission as evidence that this was the standard procedure Mr. Beckford engaged in when selling drugs and thus his involvement at the other scenes was self-evident and already admitted.  The prosecution had a distinct advantage.  This Court should note that in many classes of cases, such as assault and batter on a minor, charges are routinely severed to prevent the very type of harm present in this case - the prejudice created by the bootstrapping of evidence and showing of criminal propensity.  The result should be no different here.

    For the reasons stated above, the defendant respectfully asks that this Court   consider    decision and not let the array of errors present in this case stand.  The defendant hereby requests that This motion be   granted on this motion.

Sincerely,   *[signature]*

    Wayne Beckford

The Honorable
   Aug 10, 2005
Page 9

The District Court has Jurisdiction to Review Beckford's Claims Under the Writ of Error Coram Nobis (28 U.S.C. Section 1651).

   Regarding Beckford's motion under Rule 60(b), the honorable Justice may review Beckford's claims under the writ of error coram nobis (28 U.S.C Section 1651). The All Writ Act provide that the Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdiction agreeable to usages and principles of law. 28 U.S.C. Section 1651(a). United States v. Mavdanici, 205 F.3d 519, 521 & n.1 (2d Cir. 1998). Coram nobis is essentially a remedy of the last resort for petitioners who are no longer in custody pursuant to a criminal conviction. It provides "extraordinary remedy only under circumstances compelling such action to achieve justice, "United States v. Loschiano, 146 F.3d 88, 89-90 (2d Cir. 1976) (quoting United States v. Morgan, 346 U.S. 502, 511 (1954)), and serves "to extend the period ... in which the judge who rendered a decision would examine his handiwork." Lowery v. McCarthy, 954 F.2d 422 423 (7th Cir. 1992).
   The burden of demonstrating entitlement to relief rests on the petitioner. Nicks v. United States, 955 F.2d 161, 167 (2d Cir. 1992). A writ of error coram nobis may issue if a petitioner demonstrates that "1) there are circumstances compelling such action to achieve justice, 2) sound reason exists for failure to seek appropriate relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.
   A petitioner must demonstrate that the judgement of a conviction produce lingering civil disabilities (collateral consequences), see United States v. Keane, 85 F.2d 199, 203 (7th Cir. 1988), and that his conviction was predicated on an impermissible ground. See Stromberg v. California, 283 U.S. 359 (1931).

Beckford is entitled to relief on his claims before the district court under All Writs Act, 28 U.S.C. Section 1651(A). Beckford finished his full state sentence on May 27, 2005. No probation, he is therefore no longer in custody pursuant to his conviction. However upon completion of his state sentence, he was arrested by the Attorney General. And was place in I.N.S. detention, custody. This is because while serving his time. I.N.S. issued a notice to appear. Beckford submits that the claims presented above on this petition show that relief is appropriate to him under the All Writs Act, 28. USC Section 1651 (A) because his present circumstances

Page 10

August 10, 2005

compelling such action To Achieve Justice Bechford Also made A Showing That The errors of The Law and The Constitutional Violation, complained of The Lower court Proceeding have Rendered The proceeding itself Irregular and invalid.

Bechford has also met his burden of Entitlement To relief under The All writs Act, First This petition demonstrated That Justice has not been served

werefore petitioner, wayne A Bechford Request This honerable Court, To VACATE The Convition.

X [signature]

APPLICATION OF FORM FEE WAIVER REQUEST

AFFIDAVIT

I declare under the penalty of perjury that the foregoing is true and correct:

1. I am currently incarcerated.
2. I am indigent and cannot afford the fee to prosecute this application or form.
3. My salary or wages from prison labor is ___—0—___.
4. I believe I am entitled to the relief requested.
5. I affirm under penalty of perjury that this information is true and correct pursuant to 28 U.S.C. § 1746.

x _____
signature

Wayne A Beckford
#23611-265
F.D.C.
P.O. Box 5010
Oakdale LA 71463